Troy Lee WARNER, Defendant,

v.

UNITED STATES of America, Plaintiff.

LR–C–96–220, LR–CR–88–84.

United States District Court,
E.D. Arkansas,
Western Division.

May 10, 1996.

Order Supplementing Opinion
May 13, 1996.

Troy Lee Warner, FPC Eglin, AFB, FL, pro se.

Robert Govar, Assistant U.S. Attorney, Little Rock, AR, for U.S.

### *MEMORANDUM OPINION AND ORDER MODIFYING JUDGMENT AND COMMITMENT*

EISELE, District Judge.

Before the Court is defendant Troy Lee Warner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed on March 21, 1996. Defendant is currently incarcerat-

ed at the federal correctional institution at Elgin Air Force Base, Florida. The Court reviewed Warner's motion and ordered the Government to respond, see 28 U.S.C. § 2255, Rule 4(b), and the Government filed its response on April 15, 1996. This motion is thus ripe for disposition.

## I. BACKGROUND

On November 22, 1988, a jury found defendant guilty of conspiracy to possess marijuana, with intent to distribute, in violation of 21 U.S.C. § 846, and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (hereinafter referred to as his "Drug–Related Convictions"). The jury also found defendant guilty of using a machine gun during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).[1] On January 30, 1989, the Court sentenced defendant to a Guideline sentence of seventy eight months for each of the Drug–Related Convictions, to be served concurrently with each other, and a mandatory consecutive 120–month sentence for the

§ 924(c)(1) count.[2] To date, defendant has completed his sentence for the two Drug–Related Convictions, and has served approximately fifteen months of his 120–month sentence for the § 924(c)(1) count.[3]

## II. APPLICATION OF *BAILEY*

In his present § 2255 motion,[4] defendant argues that his conviction under § 924(c)(1) cannot stand in light of the Supreme Court's recent decision *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Government, and the Court, agree with this position.

18 U.S.C. § 924(c)(1) imposes severe criminal penalties upon any person who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm." In 1988, defendant was found guilty of "using" a machine gun in violation of § 924(c)(1) by having a loaded machine gun within two to three feet from him at the time of his arrest. At the time of that guilty verdict, and under then-controlling Eighth Circuit precedent, the facts under which the jury found defen-

---

1. This machine gun was found by law enforcement officers within two to three feet of defendant at the time of his arrest.

2. Actually, defendant was initially sentenced, under pre-Guidelines law, to concurrent five-year terms on each of his Drug–Related Convictions, and a consecutive ten-year term on the § 924(c)(1) count, although a Guidelines sentence was also announced at sentencing pursuant to two-tiered sentencing approach required by this Court's decision in *United States v. Brittman*, 687 F.Supp. 1329 (E.D.Ark.1988), *rev'd*, 872 F.2d 827 (8th Cir.), *cert. denied*, 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989). On appeal, defendant's convictions were affirmed, but the Court's imposition of the pre-Guidelines sentence was reversed, *United States v. Warner*, 894 F.2d 957 (8th Cir.1990), and on remand the Court imposed the presently applicable Guidelines sentence.

3. Defendant has been in custody since July 18, 1988.

4. The Court notes that this is defendant's second § 2255 motion (his first motion unsuccessfully attacked his convictions on Sixth Amendment grounds). The Government, however, has not argued that this second petition is abusive, see 28 U.S.C. § 2255, Rule 9(b), or that the claim raised herein has somehow been procedurally defaulted (*e.g.*, by failing to raise the issue on direct appeal). Accordingly, the Court need not address these issues (even if they could be plausibly

maintained in this case), as they have been waived. *See McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (abuse of the writ); *Lawrence v. Armontrout*, 31 F.3d 662, 666 (8th Cir.1994) (procedural default), *cert. denied*, —— U.S. ——, 115 S.Ct. 1124, 130 L.Ed.2d 1087 (1995); *see also Peltier v. Henman*, 997 F.2d 461, 473 (8th Cir.1993) (the procedural doctrines of § 2254 habeas jurisprudence apply to similar procedural issues arising in § 2255 proceedings).

Additionally, the Court is not unaware of the restrictions imposed upon successor § 2255 motions by section 105 of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996, H.R.Rep. No. 104–518, 104th Cong., 2d Sess. (signed into law on April 24, 1996). However, defendant's motion was filed prior to the enactment of that legislation, and that legislation does not state that the revisions in section 105 (as opposed to those of section 107) are to be applied either retroactively or to cases pending at the time of its enactment. Accordingly, the Court need not consider what effect, if any, the amendments of section 105 might have in this case. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, ——––——, 114 S.Ct. 1483, 1497–1505, 128 L.Ed.2d 229 (1994) (statutes must be construed to operate prospectively unless Congress manifests a clear intent to the contrary); *Hicks v. Brown Group*, 982 F.2d 295, 297–98 (8th Cir. 1992) (en banc) (same), *cert. denied*, —— U.S. ——, 114 S.Ct. 1642, 128 L.Ed.2d 363 (1994).

dant guilty were sufficient to establish a violation of § 924(c)(1). *See United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990) (proof that guns were found under a mattress in the same room as five bags of crack cocaine was sufficient to show a violation of § 924(c)(1)). Indeed, until recently, this circuit only required proof that a weapon was "present and available, in the event that it was needed, in the residence in which drugs and cash were located" to sustain a § 924(c)(1) conviction. *United States v. Felici*, 54 F.3d 504, 506 (8th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 251, 133 L.Ed.2d 176 (1995).

However, on December 6, 1995, the Supreme Court decided *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), in which the High Court clarified how the term "use" is to be interpreted in the context of § 924(c)(1). The Supreme Court described "use" as connoting the " 'active employment' of a firearm," including "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. The Court specifically held that "use" did not include concealing a firearm "nearby to be at the ready for an imminent confrontation." *Id.* The Court characterized such action as "storage" and as "not readily distinguishable from possession." *Id.*

█ *Bailey* rests on tenets of statutory construction and announces a reading of § 924(c)(1) which is narrower than the interpretations of the statute adopted by the lower courts. *Id.* at —— ——, 116 S.Ct. at 506–508. Because *Bailey* operates to expose the errors made by lower courts in interpreting the substance of § 924(c)(1), the Court finds that *Davis v. United States*, 417 U.S. 333, 345–47, 94 S.Ct. 2298, 2304–06, 41 L.Ed.2d 109 (1974), is applicable to defendant's case, and that relief under § 2255 is therefore available to secure relief from that conviction.[5] In *Davis*, the Supreme Court held that collateral relief from a federal criminal conviction is available under § 2255

when there has been an intervening change in the substantive criminal law such that it is now clear that the defendant's conviction and punishment are for conduct which the law does not regard as criminal. *Id.* at 346–47, 94 S.Ct. at 2305–06. In the wake of *Bailey*, to allow defendant's § 924(c)(1) conviction to stand would " 'result[ ] in a complete miscarriage of justice' and [would] 'present[ ] exceptional circumstances' that justify collateral relief under § 2255." *Ibid.* Accordingly, the Court joins those other courts that have given *Bailey* retroactive effect in § 2255 proceedings. See, *e.g.*, *United States v. Brown*, 914 F.Supp. 1380, 1381 (E.D.La.1996); *United States v. Turner*, 914 F.Supp. 48, 49–50 (W.D.N.Y.1996); *Abreu v. United States*, 911 F.Supp. 203, 207 (E.D.Va.1996); *see also Sanabria v. United States*, 916 F.Supp. 106, 111–14 (D. Puerto Rico 1996) (giving *Bailey* retroactive effect under *Teague*).

## III.  RELIEF UNDER § 2255

█ 28 U.S.C. § 2255 provides that a court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Thus, in light of *Bailey*, and after reviewing the evidence in the light most favorable to the Government, see *United States v. Manzer*, 69 F.3d 222, 226 (8th Cir. 1995), it is clear that defendant was not, in fact, guilty of a violation of § 924(c)(1). Indeed, the Government, on the first page of its brief, concedes as much. Therefore, the Court will vacate the § 924(c)(1) conviction and then consider what further action, if any, might be appropriate.

## IV.  RESENTENCING ON THE DRUG RELATED–CONVICTIONS?

█ The Government asks this Court, if it grants defendant's motion for relief on the § 924(c)(1) count, to recalculate his sentence and to enhance his sentence on the two drug counts for firearm possession under U.S.S.G. § 2D1.1(b)(1). The Sentencing Guidelines

---

**5.** *Davis*, rather than *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), applies to this case, since this case concerns the retroactive application of the Supreme Court's construction of a criminal statute, and not one involving a rule of constitutional criminal procedure. *E.g.*, *United States v. McKie*, 73 F.3d 1149, 1153 (D.C.Cir.1996) (citing numerous cases).

that applied at the time of defendant's convictions provided (and continue to provide) for a two-level increase in offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1) (1987). This adjustment "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3 (1987). "The defendant need not have had personal possession, or even actual knowledge of the weapon's presence; the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant." *United States v. Stevens*, 985 F.2d 1175, 1188 (2nd Cir.1993) (internal quotation marks omitted). The facts presented to the Court at the time of sentencing clearly would have warranted such an enhancement. However, in defendant's case the enhancement was not imposed because he was charged and convicted under section 924(c)(1), and to have done so would have been "double counting." *See* U.S.S.G. § 2K2.4, Application note 2 (1987); *United States v. Howard*, 998 F.2d 42, 48 (2nd Cir.1993).

The Government cites several cases in support of its position that the Court should now resentence defendant on his Drug–Related Convictions by adding this two-point sentence enhancement, and hence increasing his sentence on those counts. For a number of reasons that will be discussed below (none of which have been adequately addressed by the Government), the Court concludes that it would be improper to resentence defendant on those counts.

### 1. Double Jeopardy

■ None of the cases cited by the Government address the double jeopardy issue which, in the Court's view, arises under the facts of this case. In this case, defendant has already served the previously imposed sentence for his Drug–Related Convictions,[6] and that sentence has not been placed directly in issue in this proceeding (which involves a collateral attack and not a direct appeal).[7] The Court does not believe, in this § 2255 proceeding, that it may now reconsider defendant's original sentence on the drug-related counts. *Contra Sanabria v. United States, supra*, 916 F.Supp. at 114–15.[8] Simply put, the Court concludes that it may not impose an additional penalty for those violations after the original sentence imposed thereon has been fully served. To do so in this context would, in the Court's view, be violative of the Double Jeopardy Clause.[9]

---

6. The Judgment and Commitment Order entered in this case on May 7, 1990 (which was entered following the Court of Appeals' remand directing that defendant be sentenced under the Guidelines) states that the 120–month term imposed on the § 924(c)(1) count (Count 3) was "to run consecutive to" that imposed on the Drug–Related Convictions (Counts 1 and 2). The natural reading of this ordering therefore indicates that the sentence on the Drug–Related Convictions will run prior to that imposed on the § 924(c)(1) count, even though the strict language of § 924(c)(1) does not seem to mandate such an ordering. (There appears to be no reason, given the statutory language, why the sentencing court could not direct that the predicate drug count run consecutive with the gun count, thereby causing the gun count to be served first).

7. The Government cites, *inter alia, United States v. Pimienta–Redondo*, 874 F.2d 9 (1st Cir.) (en banc), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989), for the proposition that resentencing is appropriate when a single count of a multi-count conviction has been reversed. However, in *Pimienta–Redondo*, the defendants *had not* served the duration of the non-reversed sentences previously imposed, *id.* at 15, and they had, in fact, placed those sentences in issue by

direct appeal. *Id.* For precisely the same reasons, the Eighth Circuit's recent decisions in *United States v. Burke*, 80 F.3d 314 (8th Cir. 1996), and *Woodall v. United States*, 72 F.3d 77 (8th Cir.1995), are inapposite.

8. In *Sanabria*, which, like this case, involved a *Bailey* challenge to a § 924(c)(1) conviction raised in a § 2255 motion, the district court simply elected to resentence the defendant on his drug conviction. The *Sanabria* decision, while containing a thorough discussion of the retroactivity question, did not contain any discussion of that court's authority to resentence the defendant. The *Sanabria* court did not address the double jeopardy issue (or the other issues) raised by this Court, and there is no indication of the time served by the defendant on his underlying drug sentence in that case. Thus, a meaningful determination of that defendant's legitimate expectation of finality in his drug related sentence is not possible. For these reasons, the Court finds the *Sanabria* decision unpersuasive as it pertains to the resentencing issue.

9. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. Amongst oth-

■ The Court recognizes that, under the "sentence package" rule, a sentencing court can modify the sentence imposed upon the individual counts of a multi-count conviction where the defendant has succeeded in challenging less than all of those convictions on direct appeal.[10] *United States v. Pimienta–Redondo, supra,* 874 F.2d at 16; *United States v. Shue,* 825 F.2d 1111, 1114–15 (7th Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); *United States v. Rosen,* 764 F.2d 763, 766–67 (11th Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986); *see also United States v. McKnight,* 17 F.3d 1139, 1144–46 n. 8 (8th Cir.) (opinion of Lay, J., not joined by Magill & Hansen, JJ.), *cert. denied,* — U.S. —, 115 S.Ct. 275, 130 L.Ed.2d 192 (1994). However, the Double Jeopardy Clause prevents the sentencing court from doing so once the defendant has developed a legitimate "expectation of finality in the original sentence" imposed on his unsuccessfully appealed, or non-appealed, convictions. *United States v. DiFrancesco,* 449 U.S. 117, 139, 101 S.Ct. 426, 438, 66 L.Ed.2d 328 (1980). For two reasons, the Court concludes that defendant had such a legitimate expectation of finality in his seventy-eight month sentence imposed on his Drug–Related Convictions at the time this motion was filed.

■ First, while it is true that a defendant cannot be said to have a legitimate expectation of finality in his sentence when he directly challenges either his sentence or the conviction from which it derives, *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265 (1988), it must be remembered that defendant has not, in the present motion, mounted any attack upon his Drug–Related Convictions or sentences. *Compare Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (per curiam). The "sentence package" rule, as indicated by the cases cited above, is usually applied to permit resentencing when the defendant has challenged all of his convictions on direct appeal, and has succeeded in having some, but not all, of those convictions vacated. The Court is aware, however, that some decisions have extended this rule to allow a defendant, who has successfully appealed some (but not all) of the convictions imposed upon a multi-count indictment, to be resentenced on remand even on the counts which he chose not to appeal, reasoning that the defendant does not, under those circumstances, have a legitimate expectation in the finality of his unappealed convictions and sentences, since they were imposed as part of the overall "sentencing plan" that was based (in part) upon his vacated convictions. *E.g., United States v. Busic,* 639 F.2d 940, 947–48 (3rd Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *see also United States v. Sales,* 725 F.2d 458, 460 n. 1 (8th Cir.1984). "[H]owever, there is a difference between a collateral attack on a particular sentence under ... 28 U.S.C. § 2255 and a direct appeal from multiple count convictions," *United States v. Rosen, supra,* 764 F.2d at 766, in that in the former "the power of a court to modify unchallenged sentences may be more limited because 'only a specific sentence is before the district court ... [and] [t]he court has power only over what is brought before it.'" *United States v. Cochran,* 883 F.2d 1012, 1015 n. 6 (11th Cir.1989) (citation omitted). In this Court's view, this difference is plainly material to the proper application of the "sentence package" rule. Whatever merits that rule may have in the direct appeal context, this Court concludes that it should not be used to allow the Court to re-open a sentence on a conviction that has become final (in the sense that it is no longer appealable by any party or correctable under Fed.R.Crim.P. 35(c)), when neither that sentence nor its predicate conviction has been challenged in a § 2255 motion.[11] *Chandler v.*

er things, the Double Jeopardy Clause protects against multiple punishments for the same offense. *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2525–26, 105 L.Ed.2d 322 (1989).

10. Whether the "sentence package" rule has any application outside the context of a remand following a direct appeal is a highly debatable question as to which the Court has serious doubts.

*See United States v. Henry,* 709 F.2d 298, 308–09 & n. 16 (5th Cir.1983) (en banc).

11. Indeed, once a defendant's sentence is no longer subject to attack on direct appeal, it can be seriously argued that the defendant's legitimate expectation of finality attaches. *See United States v. DiFrancesco, supra,* 449 U.S. at 136–37, 101 S.Ct. at 437–38.

*United States,* 468 F.2d 834, 837 (5th Cir. 1972); *cf. United States v. Moss,* 614 F.2d 171, 175 (8th Cir.1980) (holding that, in a Rule 35 proceeding, the district court may not increase "the sentence on valid convictions after sentence on another count was declared invalid"); [12] *Johnson v. United States,* 619 F.2d 366, 368 (5th Cir.1980) (allowing district court, in remand in a § 2255 proceeding, to reconsider unappealed sentences for downward modification). As the Fifth Circuit explained in *Chandler:*

> To allow the trial court's action in this case to stand would place a rather formidable deterrent in the path of a convicted defendant who desires to apply for post conviction relief on only one count of a multi-count conviction. By subjecting the defendant to the contingency of having a non-challenged sentence escalated to the statutory maximum, we would truly be inviting the defendant to play "Russian Roulette."

468 F.2d at 837. The Court wholeheartedly agrees with this analysis.

▉ Second, and perhaps more importantly, defendant has, in fact, completed the (assumedly) lawful sentence [13] imposed upon him for his Drug–Related Convictions, and it cannot, in this Court's view, be gainsaid that a defendant enjoys a legitimate expectation of finality in a term of incarceration which was lawfully imposed upon him at the time of sentencing, which was unappealed, and which was also lawful at the time he completed serving that sentence.[14] *See United States v. Daddino,* 5 F.3d 262, 265 (7th Cir.1993); *United States v. Arrellano–Rios,* 799 F.2d 520, 524–25 (9th Cir.1986); *see also Jones v. Thomas, supra,* 491 U.S. at 393–96, 109 S.Ct. at 2531–33 (Scalia, J., dissenting); *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873); *United States v. Fogel,* 829 F.2d 77, 88–89 (D.C.Cir.1987) *United States v. Jones,* 722 F.2d 632, 637–39 (11th Cir.1983); *but cf. United States v. Rico,* 902 F.2d 1065, 1068 (2nd Cir.), *cert. denied,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). Indeed, the Eighth Circuit has recently commented:

> "It is well settled that a trial court lacks jurisdiction to alter a previously imposed

---

12. The recent case of *United States v. Gruenberg,* 53 F.3d 214 (8th Cir.1995), is not to the contrary, since that Rule 35 case did not involve increasing the sentences imposed on the unchallenged counts.

13. While that sentence was "lawful" when imposed, in that it was imposed in accordance with the then-prevailing law of this circuit, as it now turns out, if one accepts the premise that *Bailey* did not alter the law, but merely clarified the "true" state of the law that had always existed (but that had been repeatedly misunderstood by the lower courts), that seventy-eight month sentence was not a "lawful" sentence, in the sense that it was not in keeping with the Guidelines. Put another way, had the Government not charged and convicted defendant on the § 924(c)(1) count, and had the Court sentenced him to only seventy eight months, the Government could have appealed and that sentence would have been set aside and this Court ordered to resentence him after adding the two levels as required by the Guidelines. It is settled that the Double Jeopardy Clause is not violated when a Court resentences a defendant to correct an illegal sentence, even when doing so results in an increase in the sentence imposed. *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). (Whether the Court presently has the *power* to do so will be discussed *infra.*). So, it could be argued that, by raising the *Bailey*

issue, defendant has reopened the entire "package" of his sentence, in the sense that he has alerted the Court to the "illegality" of the sentence imposed on his Drug–Related Convictions.

To accept this argument, the Court would have to embrace the premise that *Bailey* did not actually change the law, but merely espoused the "true" state of the law that had theretofore escaped the lower courts. Alternatively, *Bailey* could be viewed as nothing less than an actual change in the law, in which case the Court's prior sentence—which was in accord with the then-prevailing law—could not be said to have been unlawful. Deciding which of these competing views is correct is a difficult question on which legal scholars and philosophers can (and do) differ. And; it does not appear that the Supreme Court has articulated a coherent view on the subject. *Compare, e.g., Teague v. Lane, supra, with Davis v. United States, supra.* Fortunately, given its ultimate resolution of this case, the Court need not attempt to definitively answer this highly metaphysical question.

14. The Supreme Court's decision in *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), is not to the contrary, for the simple reason that, in contrast to this case, *Jones* did not involve any effort, following the vacation of one count of a multi-count conviction, to increase the punishment previously imposed on the non-vacated count.

valid sentence once the defendant begins to serve the sentence, and for the court to subsequently alter a sentence places the defendant in double jeopardy."

*United States v. Garner,* 32 F.3d 1305, 1312 (8th Cir.1994) (quoting *Johnson v. Mabry,* 602 F.2d 167, 170 (8th Cir.1979)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995).[15] So, accepting the premise that the sentences imposed on defendant's Drug–Related Convictions were lawful, the Court concludes that he has a legitimate expectation of finality in those sentences, and that, as such, the Double Jeopardy Clause prevents it from resentencing him for those convictions.

### 2. Due Process

■■■■■ Even if the Court were to conclude that the sentences imposed upon him were unlawful, and that he could not therefore enjoy a legitimate expectation of finality in those sentences for double jeopardy purposes, *see United States v. Edmonson,* 792 F.2d 1492, 1496 n. 4 (9th Cir.1986) ("There can be no expectation of finality as to sentences that are illegal. . . ."), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987), the Court would nevertheless conclude that, under the facts of this case, it would be impermissible to resentence defendant on his Drug–Related Convictions. This conclusion flows not from the protections afforded by the Double Jeopardy Clause, but rather from those provided by the Due Process Clause.[16] " '[T]he power of a sentencing court to correct [upward] even a statutorily invalid sentence must be subject to some temporal limit,' " *DeWitt v. Ventetoulo,* 6 F.3d 32, 34 (1st Cir.1993) (citing *Breest v. Helgemoe,* 579 F.2d 95, 101 (1st Cir), *cert. denied,* 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1542, 128 L.Ed.2d 193 (1994), and "[a]fter a substantial period of time, it might be fundamentally unfair, and thus vio-

lative of due process for a court to alter [upward] even an illegal sentence." *Breest v. Helgemoe, supra,* 579 F.2d at 101. Where exactly to draw this line, however, is not an easy question (and, perhaps, no "bright-line" rule can be adopted in this context). All such exercises tend to produce rules that, in application, are somewhat mechanical, and which sometimes yield seemingly arbitrary results. Nevertheless, it is often necessary for courts to endeavor to draw such lines (or to at least erect general guideposts), especially in the criminal context, if for no other reason than to insure "that . . . the Government . . . turn[s] square corners" in dealing with defendants. *Jones v. Thomas, supra,* 491 U.S. at 396, 109 S.Ct. at 2533 (Scalia, J., dissenting).

Various candidates present themselves as potential triggers for this due process interest. For example, while it used to be true, prior to November 1, 1987, that an illegal sentence could "be corrected at any time pursuant to F.R.Cr.P. 35," [17] *Burns v. United States,* 552 F.2d 828, 831 (8th Cir.1977), now, absent a remand from a direct appeal, see Fed.R.Crim.P. 35(a), a federal sentencing court lacks the power to correct even an illegal sentence after seven days. Fed. R.Crim.P. 35(c); *see also id.,* 1991 Commentary; *United States v. Blackwell,* 81 F.3d 945, 949 (10th Cir.1996); *United States v. Fahm,* 13 F.3d 447, 453–54 (1st Cir.1994); *but see United States v. Himsel,* 951 F.2d 144, 146–47 (7th Cir.1991) (Rule 35(c)'s seven-day time limit not a curb on court's authority to correct an illegal sentence). Thus, a defendant could make a serious argument that he has a right to expect that his unappealed sentence will become final after the passage of that period. This seven-day window, however, is probably too short to trigger the protections of the Due Process Clause. *See Breest v. Helgemoe, supra.* Alternatively, it could seriously be argued that since the Government has the right to appeal

---

**15.** Whether this rule is constitutionally required by the Double Jeopardy Clause was expressly left open by the Supreme Court in *DiFrancesco.* 449 U.S. at 134, 101 S.Ct. at 435–36.

**16.** "[N]or shall any person . . . be deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. V.

**17.** This version of the rule still applies to any offence that occurred prior to November 1, 1987. *See United States v. Woods,* 973 F.2d 677, 678 (8th Cir.1992). Defendant does ·not fall within that class of persons.

a sentence, 18 U.S.C. § 3742(b), a defendant has a right to expect that his sentence will be final if the government fails to take an appeal within the time allowed by law (currently thirty days, or possibly up to forty days if the defendant waits until the last minute to file an appeal of his own, Fed.R.App.P. 4(b)). *See United States v. Rico, supra,* 902 F.2d at 1068. This, too, is likely to be an insufficient timespan to trigger the Due Process Clause. However, where a defendant has completely served a term of imprisonment that was, at the time of sentencing, lawfully imposed, and which was also lawful at the time of its completion (and which was not rendered unlawful (if at all) until almost a year after it was completed), the Court believes that any reasonable person would conclude that the defendant has paid his debt to society on that charge, and that accordingly the defendant is entitled to believe, legitimately, that his sentence for that crime has become final. *United States v. Arrellano–Rios, supra,* 799 F.2d at 524–25.

In erecting its numerous barriers to defendants seeking habeas relief, the Supreme Court has repeatedly noted that the state and society have a legitimate interest in the finality of criminal judgments, *see, e.g., Teague v. Lane, supra,* 489 U.S. at 309, 109 S.Ct. at 1074–75; *United States v. Frady,* 456 U.S. 152, 164, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816 (1982), and that such judgments, even if arguably founded upon some form of error (constitutionally or otherwise), should not be easily re-opened. *See generally McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The Court sees no reason why this interest in finality should not also extend to the defendants who are subject to those judgments. *See Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (the Double Jeopardy Clause op-

erates to insure that defendants are not required to "live in a continuing state of anxiety and insecurity"); *see also United States v. Scott,* 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). In a just society, what is sauce for the goose must be sauce for the gander. The Court therefore concludes, under the facts of this case, that defendant had a right to expect that the sentences on his Drug–Related Convictions had become final upon their completion (if not earlier), and that it would be fundamentally unfair, and hence violative of due process, to resentence defendant on his Drug–Related Convictions this late in the game.

### 3. Jurisdiction

Even if the Court were to conclude that there were no constitutional barriers to resentencing defendant on his Drug–Related Convictions, the Court would nevertheless conclude that it presently lacks jurisdiction to do so, even assuming that the seventy-eight month sentences imposed on those convictions constitute illegal sentences.[18] It is settled that "[a] district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. Blackwell, supra,* 81 F.3d at 947. 18 U.S.C. § 3582(c)(1)(B),[19] one potential such statute, provides that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." As discussed above, Rule 35(c)—the only provision of Rule 35 that is even arguably applicable in this case—expressly limits the Court's inherent authority to correct any sentence, including an illegal sentence, to a seven-day timeframe. *See United States v. Fahm, supra,* 13 F.3d at 453–54; *but see United States v. Himsel, supra,* 951 F.2d at 146–47. This rule applies

---

**18.** Arguably, this jurisdictional issue should have been discussed at the outset, since, whenever possible, the resolution of constitutional questions should be avoided. *See, e.g., Simpson v. United States,* 435 U.S. 6, 11–12, 98 S.Ct. 909, 912–13, 55 L.Ed.2d 70 (1978). However, given the overall analytical setup of this opinion, the discussion of this issue, from a contextual point of view, fits best in its present location. More-

over, as the Court is venturing into relatively unchartered waters on this jurisdictional issue, concerns of judicial economy warrant the discussion of alternative rationales for the Court's disposition of the resentencing issue presented in this case.

**19.** No other provision of § 3582 is arguably applicable to this case.

equally to efforts to increase a sentence, *United States v. Fahm, supra,* or to decrease a sentence. *United States v. Blackwell, supra.* Moreover, the time limitation of Rule 35(c) is jurisdictional. *United States v. Abreu–Cabrera,* 64 F.3d 67, 73 (2nd Cir. 1995); *United States v. Townsend,* 33 F.3d 1230, 1231 (10th Cir.1994). So, the Court obviously lacks jurisdiction to increase defendant's sentences on the drug-related counts under Rule 35(c).[20]

The only other potential source of authority for the Court to modify defendant's Drug–Related Convictions is the federal habeas statute itself. By its express terms, § 2255 provides the Court, upon motion by the defendant, with the authority to "vacate, set aside or correct [his] sentence"; however, since defendant did not challenge either his convictions or sentences imposed on his drug-related counts, it can seriously be argued that his sentences on those counts are not before the Court in this § 2255 proceeding. *See United States v. Cochran, supra,* 883 F.2d at 1015 n. 6. Leaving that consideration to one side, it is clear that § 2255 provides the Court with the authority to correct a challenged sentence *downward.* But, does § 2255 provide the Court with the authority to modify a sentence (challenged or otherwise) *upward?* The Court thinks the answer to that question is an emphatic and unqualified "no."

Consider the following hypothetical. Assume that a defendant, under the same facts as are currently presented, had only been charged and convicted on the drug-related counts, and that the Court had imposed the same seventy-eight month sentences that it did in this case. Assume further that the Government, for some reason, chose not to appeal those sentences. Now assume that a year (or just under a year, to take account of the recently enacted amendments to § 2255) after that judgment had become final the defendant filed a timely § 2255 motion challenging his Drug–Related Convictions and/or the sentences imposed thereon. Could the

Government, in defending against that § 2255 motion, argue not only that the defendant's convictions should not be set aside, but also that the Court had made an error in not imposing the § 2D1.1(b)(1) enhancement for possession of a firearm, and that the Court should therefore not only deny the defendant's requested relief, but should also enhance the defendant's sentences to bring them into accord with the Guidelines? Plainly, the answer to this last question is "no." To conclude otherwise would be to give the Government a second bite at the sentencing apple, and sanction a result that could operate to punish a defendant for making a § 2255 motion, a result that should not, in this Court's view, be tolerated.

Admittedly, this analogy does not precisely fit the facts of this case, in that the Government could not have (successfully) appealed the Court's refusal to apply the § 2D1.1(b)(1) enhancement at the time of sentencing. Nevertheless, those sentences became final once the Government (or, for that matter, the defendant) lost its ability to challenge them on direct appeal, and the oft-touted interest in the finality of judgments should bar the Government's attempt to relitigate those sentences at a later date. *See Green v. United States, supra,* 355 U.S. at 187, 78 S.Ct. at 223. While it is true, as compared to the overall sentence imposed, that defendant will not be prejudiced if the Court were to grant the Government's resentencing request (in the sense that, while his sentences for the Drug–Related Convictions would be increased, his total term of incarceration would be decreased), it simply cannot be ignored that to allow this resentencing would be to increase a sentence that has already become final, and such a consequence cannot be said to be of no moment to the defendant. While such a result might not be objectionable in the context of a direct appeal, the interest in the finality of judgments that attaches once such appeals have been exhausted makes the Government's efforts to re-open an unchal-

---

**20.** Even if the Court were to conclude that the pre–1991 (and post November 1, 1987) version of Rule 35 applied to this case, the Court's conclusion would remain unchanged. Under that version of Rule 35, a court's inherent authority to

correct an illegal sentence was limited to the time for filing a notice of appeal, *United States v. Rico, supra,* 902 F.2d at 1068; *United States v. Cook,* 890 F.2d 672, 675 (4th Cir.1989), and that time has long since passed.

lenged sentence in a post-conviction proceeding far more problematic. *See United States v. Henry, supra,* 709 F.2d at 308–09 n. 16. The Court does not believe that § 2255 was enacted to provide the Government with an opportunity to have the district court correct a sentence, even one that has later been determined to be illegal. Simply stated, the Court believes that if a § 2255 movant elects not to challenge a portion of the sentence imposed at trial, he should, even if he loses on his § 2255 motion, be in no worse position, vis-a-vis that sentence, than when he started.[21] *See Chandler v. United States, supra,* 468 F.2d at 834.

Although the preceding analysis was predicated, in the main, upon considerations of the policies underlying the federal habeas statute, there is a more fundamental problem with any attempt by the Government to rely upon that statute to vest the Court with jurisdiction to increase the sentences imposed upon defendant's Drug–Related Convictions. The language of § 2255 expressly provides that the relief available thereunder is available only to "[a] prisoner in [the] custody" of the United States, and no matter how hard one tries, one simply cannot shoehorn the United States into the class of persons who are entitled to seek relief under that statute. Moreover, the relief sought by defendant in this § 2255 proceeding is only the vacation of his § 924(c)(1) conviction and sentence—he is not seeking any relief as to his Drug–Related Convictions. The only party seeking any "relief" as to those convictions (assuming that increasing the sentences imposed thereon can be called "relief" for purposes of the federal habeas statute) is the Government, and the Government is just not entitled to any such "relief" in a § 2255 proceeding. In sum, the Court simply cannot find any basis to conclude that § 2255

affords it jurisdiction to upwardly modify the sentences it previously imposed on the Drug–Related Convictions.

■ Accordingly, the Court must conclude that it is powerless to grant the Government's request for resentencing. While it is true that the Government was not at fault for failing to raise the Guidelines enhancement issue on appeal, the fact is that it did not, and that was the only opportunity Congress authorized for it to do so. Moreover, the Court is unwilling to craft any equitable exception to this rule. The rule is that the Government may not challenge a criminal defendant's sentence unless authorized to do so by statute, and "[a] technical rule with equitable exceptions is no rule at all." *Jones v. Thomas, supra,* 491 U.S. at 396, 109 S.Ct. at 2533 (Scalia, J, dissenting).

### V. A STAY?

■ In the Court's view, defendant is plainly entitled to relief from his § 924(c)(1) conviction, and neither the Double Jeopardy Clause nor the Due Process Clause would tolerate resentencing defendant on the drug-related counts. Further, the Court has concluded that it lacks any jurisdiction to undertake such a resentencing. Accordingly, defendant is entitled to be released from custody. However, the Court would be less than candid if it did not acknowledge that the facts of this case raise substantial and difficult legal issues, as to which reasonable jurists could differ. As such, the Court believes that execution of the writ of habeas corpus in this case should be stayed pending any appeal. The Court has reviewed the rule applicable to this Court, Fed.R.Civ.P. 62(c), and the factors regulating the issuance of such a stay as articulated by the Supreme Court in *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724

---

21. A second hypothetical might help illustrate this point. Assume that a defendant was sentenced in one proceeding to a five-year term of imprisonment, and that in a second proceeding he was sentenced to a consecutive five-year term on an unrelated count, see *18 U.S.C. § 3584(a),* and that neither conviction or sentence was challenged on direct appeal. If the defendant then challenged his second conviction under § 2255, could the Government use that opportunity to have the court correct a legal error in the sentence imposed on the first count? Obviously not.

Again, while this hypothetical does not precisely fit the facts of this case, it is useful in illustrating the problems that could arise if the Government were permitted to expand the issues raised in a § 2255 proceeding beyond those advanced by the movant. And, of course, nothing in this hypothetical prevents the possibility that the defendant could receive a higher aggregate sentence should he later be re-convicted on the vacated count. See *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

(1987), and is of the opinion that issuance of the writ in this case should be stayed pending either the Government's perfection and prosecution of an appeal, or until the Government informs the Court that it does not intend to take such an appeal. If the Government fails to file a notice of appeal within the time permitted by law, the writ will issue forthwith.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Troy Lee Warner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be, and it is hereby, GRANTED. Troy Lee Warner's conviction on the one count of using a firearm in violation of 18 U.S.C. § 924(c)(1) is vacated in light of the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). All other terms of the Judgment and Commitment Order remain in full force and effect.

As discussed in this opinion, defendant's correct sentence on the non-vacated counts is seventy-eight months, which, as noted above, has already been fully served. However, since defendant will be subject to a further term of imprisonment on those counts if the Court's decision on the resentencing issue is reversed, and since the Court's balance of the appropriate considerations so require, IT IS FURTHER ORDERED that defendant's release from custody shall be STAYED pending final resolution of any appeal of this Order. If the appeal is not perfected within the time allotted by law then the writ will issue forthwith.

### *SUPPLEMENTAL ORDER*

After filing its initial opinion in connection with defendant Troy Lee Warner's motion seeking relief under 28 U.S.C. § 2255, the Court, in reviewing a similar motion filed in an unrelated case, became aware of a recent Eighth Circuit opinion relied upon by the Government in support of its resentencing argument. Although the Government did not rely upon that opinion in the present case, the Court, in the interest of completeness, has chosen to file this supplemental order to discuss that decision.

The decision to which the Court is referring is the Eighth Circuit's opinion in *United States v. Roulette,* 75 F.3d 418 (8th Cir.1996). In *Roulette,* the Court of Appeals, after vacating the defendant's conviction under 18 U.S.C. § 924(c)(1) in light of the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), remanded the matter for resentencing so that the district court could consider whether a two-point enhancement under U.S.S.G. § 2D1.11(b)(1) was applicable to the defendant's underlying drug convictions.[1] *United States v. Roulette, supra,* 75 F.3d at 426. In contrast to the present case—which involves an attempt to have the Court resentence defendant in connection with his § 2255 motion—*Roulette* involved resentencing following a direct appeal, over which sentencing proceeding the district court plainly had jurisdiction. Fed.R.Crim.P. 35(a). For the reasons more fully discussed in the Court's initial opinion (which opinion, in footnote 7, discusses similar cases), the Court concludes that *Roulette* is not presently applicable because: (1) that case involved a defendant's direct appeal as opposed to a motion under § 2255; and (2) in that case the defendant himself appealed the drug convictions on which the Government sought resentencing. As such, the double jeopardy and due process issues raised by this case were not at issue in *Roulette,* and that case is therefore not applicable in the context of this § 2255 proceeding.

The Court also takes this opportunity to further explain its decision to grant a stay in this matter under Fed.R.Civ.P. 62(c). *See also* Fed.R.App.P. 8(a), 23(c), (d). First, although the Government had not moved for a stay at the time the Court's initial opinion was filed, that fact did not prevent the Court from entering its stay order. *See, e.g. Hakeem v. Beyer,* 774 F.Supp. 276, 297–99

---

1. Although *Roulette* involved an enhancement under U.S.S.G. § 2D1.11(b)(1), and the present case involves an attempt to obtain an enhancement under U.S.S.G. § 2D1.1(b)(1), this difference is of no moment.

(D.N.J.1991), *aff'd in part, rev'd in part and vacated*, 990 F.2d 750 (3rd Cir.1993). As the court discussed in its initial opinion, *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), governs the determination whether to issue a stay in this case, and directs the Court to consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 776, 107 S.Ct. at 2119. Although none of these factors is alone dispositive, the Eighth Circuit has indicated that the "likelihood of success on the merits is most significant." *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir.), *cert. denied*, 506 U.S. 863, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992).

Given that defendant has been found guilty of serious drug-related crimes, and that society unquestionably has an interest in seeing that he is adequately punished for those crimes, the Court has little doubt that factors two through four strongly weigh in favor of granting a stay in this case. *See generally Hilton v. Braunskill, supra*, 481 U.S. at 777–78, 107 S.Ct. at 2119–20. However, in light of the views expressed in the Court's initial opinion, the Court cannot conclude that the Government has made a strong showing that it is likely to succeed on the merits of the resentencing issue. Nevertheless, the Supreme Court has held that when the state "can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Id.* at 778, 107 S.Ct. at 2120. Given the legal complexity of the issues presented by this case (as pertain to the Government's attempt to resentence defendant in this § 2255 proceeding), the Court is satisfied that, given this diminished standard, the Court's prior stay order was (and is) warranted. The Court believes that the resentencing issues raised in this case present questions of law upon which reasonable jurists could differ, and that the Government therefore has a "substantial case" upon which it may ultimately prevail on appeal. *Cf. Barefoot v. Estelle*, 463 U.S. 880, 892–93 & n. 4, 103 S.Ct. 3383, 3394–95 & n. 4, 77 L.Ed.2d 1090 (1983); *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994).

Finally, the Court takes this opportunity to suggest to the United States Attorney's Office that, in the interests of fairness and justice, the Court's decision in this case be brought to the attention of any judge in the Eastern District of Arkansas before whom a similar § 2255 motion is pending. *Cf. Model Rules of Professional Conduct* Rule 3.3(a)(3).

The Court's Memorandum Opinion and Order Modifying Judgment and Commitment entered on May 10, 1996 is hereby reaffirmed in all respects.

IT IS SO ORDERED.